Opinion oí1 the Court, by
Judge Mills.
Palsíateer, the defendant in error, leased to Mary and Will. D. Heydell, two of the plaintiffs in error, a stable and tavern in Lexington, with its necessary furniture, for one year, which commenced on the 20th March, 1821, and as evidence of the contract, entered into articles of agreement, stipulating the rent of three hundred dollars, also, thirty dollars for the hire of a negro woman slave, part of the time, and agreeing to pay to Palmateér, for what liquors and other necessaries he had and should advance, to the amount of one hundred and twenty dollars. Shortly afterwards, said plaintiffs in error executed to Palmateer a mortgage on a female slave. The mortgage recites, substantially, the same agreement for renting, and is conditioned to be void ou their paying to him the three hundred doilarsfor rent, and not exceeding one hundred and fifty dollar's for the hire of the slave and articles which had and should be furnished. In December, 1321, before therent became due, or the term expired, Palmateer filed this bill, alleging that he had furnished the said Mary and W. D. Heydell, with articles, liquor, &c. to the amount of two hundred dollars; that he had become their secu rity to another person, which he should have to pay; that they had destroyed and wasted the articles leased to them, as well as injured the house, to a large amount in value; that they had hut little property, and what they had was fast disappearing; and that they’were intending to remove the slave mortgaged, out of thejurisdiction of the court, and put it out of his power to reach her, and to defraud him, had put her in possession of a certain Francis Downing, who then held her, and whom he makes defendant also. He prayed that an injunction might be granted to stay waste; that the defendants might be compelled to pay for the waste already done, assessed by a jury; that they might be enjoined and restrained from removing the slave; and that she might he subjected to ^ie demands aforesaid. An order was obtained, directing, that unless the defendants gave bond and security to have the slave forthcoming to answer the decree of the court, the-sheriffshould take her and hire her out. *65 until the end of the next February term. The sheriff returned the process executed, and that the slave was surrendered to him. After the suit bad stood the requisite length of time, it was heard without an answer, and the bill was taken for confessed, the term of the lease being then long expired. The court decreed that the complainant should recover four hundred and fifty dollars, to wit, the rent and the one hundred and fifty dollars for slave-hiee and articles furnished; with interest from the 20th March, 1822, until paid, and also, fifty dollars, the excess of articles furnished, without interest; and that unless the defendants paid it in about three months, their equity of redemption for the slave should be foreclosed, and a commissioner named should sell her, taking bonds for her price, without saying to whom, or directing how the price should be disposed of.
Decree of the circuit court' on the bill pro confessb.
(1} The chancellor will, on bill filed with proper allegations, restrain wastb.
(2) Where a. demand is secured by mortgageqho chancellor has jurisdiction, and will anticipate the hour of payment, so far as to secure the mortgaged property.
(3) When the property subject to distress for rent ; i about to 1)0 removed before the rent is dito, a court of law may, under the ;dfitijtc,2Dig. lOfi-2, inter-l’en); ergo, the chancol- !or may.
*65 To reverse this decree, the defendants below have prosecuted this writ of error.
(1) One objection made to this bill, is, that it is brought prematurely, before any thing was due. It is certain that the bill, so far as it sought to restrain waste, would lie; for it is too well settled to need thenid of authority, that the chancellor will, on a bill filed-for that purpose, with proper allegations, restrain waste. So far as the bill seeks to recover for the waste committed, it cannot be sustained,and the court below acted properly in disregarding it.
(2) Whether the bill could so far anticipate the end of the term for the rent due, under the charges therein, is the main question. If the demand was purely legal, it might be readily conceded, that the chancellor would not interfere, but would leave the party to the consequences of his misplaced confidence; but there being a mortgage in this case to secure the demand, gave a court of equity jurisdiction of it; and where the demand is of a character belonging to the jurisdiction of a court of equity, the chancellor will, when justice is about to be evaded, anticipate the hour when the demand is due, so far as to secure the subject on which the demand is to operate. _ Such are writs of ne exeat, which are granted when great danger of injustice is apparent, in cases only where the demand is equitable.
(3) Indeed, in a case of rents, such as this, where the estate on which the distress can operate, is about tobe removed before the term expires, or the rent is due, a *66 coari of law may interfere and secure it, according to an act of the Legislature of Virginia, still in force in this country. See 2 Dig. L. K. 1002. We do not, therefore, conceive that the chancellor interfered in this case prematurely, under the allegations of the bill, which showed that the slave was about to be removed, and that measures were in operation to take her oil’, and that there was little or no prospect of having the demand satisfied out of any other fund. The lease or article of agreement, made part of the bill, shows when the debt is due, without an amended bill.
In a dfi-oi oo for sc!J-in»C mortgaged 0‘.tlltP,pVO-i t.iim ought to bo modo lor payment of surplus In tliii moitgai;-
(:>) H V pfror in a decree leave'it iviib Un: commio-sinner ap-sclHo'dficiile whether pay-iftont or ten-andto^u-6’ thorite him, jn case of d«-thesaíemakfe
(fi) The cor-root practice is, for the oiTthe^first hearing, to decide on the «um due, to the payment, atid to decree a foreclosure and a sale ni-si, and after-wards, in tern¡, to decide whet!»:.-tris decree has been ¡vr • formed, a;u'i if not, to make it ah !o-lute.
*66 (4) We cannot, however, sustain the vague terms of this decree, which directed the slave to be sold, without appropriating the price, or directing that the balance, if any, should be paid over to the defendants, who had thereby no mode left them to come at any surplus of price which might remain, ft is true, such balance would equitably belong to them; but still it is right for the chancellor, in the same contest, to guard their rights, and to afford them, by his decree, a remedy for the balance, without driving them to another suit. Buell direction ought to have been inserted.
(5) Nor do we approve the decree of the court which gave day before the final foreclosure and sale of the estate, and then directed the commissioner topro-feed, leaving it to him to ascertain whether (he money FriS paid or tendered, and to decide accordingly'. Whether the tender was or was not a good one, and whether the payment was or was not made, was left to ^lls adjudication, when it belonged to the court to decide on such matters.
(6) The practice of courts of equity on this subject 's simple, and ought not to be departed from. Whatsoever controversies may brise about the validity of a mortgage, its forfeiture and its payment in whole or in Parb’s decided upon at the first hearing, and the court ascertains what is due, which, in the case of contested accounts and payments, is or may be previously done1 by a commissioner, and then, by interlocutory decree. declares that unless this sum- is paid or tendered by a particular time, the mortgage shall be foreclosed, and a sale decreed, if a sale is proper to be had. The s() „jven ought to expire in term time, and is sometimes, under extraordinary circumstances, iengui-ened by the chancellor. If, when that time expires, *67 payment is proved, with such costs as the chancellor shall adjudge, the mortgage is released, and there is an end of the controversy, if a tender and refusal is relied on, the money is brought into court, with such costs as shall be allowed, and the party is thus allowed to redeem. If, on the contrary, neither payment nor tender is relied on, (on all which matters, the court ought to adjudge,) the court may decree an absolute foreclosure, in many cases, without a. sale. Rat if a sale is prayed for aud deemed expedient, the chancellor decrees it accordingly, and appoints his cominkt iourr to execute it. This proceeding is so contrary, both in form and substance,, to that adopted by the court below, that the decree, for this cause, cannot be sustained.
' a 5ai0 0l mortgaged “^ito, where *eg gal securities ful' tí,e. l’it> . do-creed that tl10 defends pFtHiani'tlH balance, at-ter the pr.;., ce,eJs of tiw> & thin the compft **A^e 0iCun'. 10
(8) Proceed - ° ^e-¿."in' rem, to reach’ the pledge, & ^othing^dsc todo,
(7) Another objection to this decree, is, that it de.crees the whole amount to the complainant, as positively as, and in the words of a judgment at law, and gives to the complainant an execution to recover either the whole of it or any balance that may remain clue. The practice of decreeing either the whole sums, or bal-anees which may be due after sales are executed on mortgages, where the party, as in this case, holds legal securities, on which he may recover the residue at law, appears, in some instances, to have crept into the practice of this country, through inattention to principle; and we are satisfied that it cannot be sustained, eonsis-tent with the powers of a court of equity. Where there is a legal remedy for the demand, law still retains its rights over the controversy, and equity only attaches so far as to subject the pledge to the payment, which a court of law will-not do. And although, in many cases, a court of equity will finish the whole mat-. ter, yet these are eases where its aid is necessary to proceed at all in the matter, and not where law can proceed without it, and equity only has its particular part to act.
(8) Hence we conclude, that proceedings to foreclose a mortgage are only proceedings in rem, to reach the pledge, and when that is accomplished, equity has no-thingfurther to do in the matter. The party can proceed at law on his securities, either before, at the time of, or after the end of the chancery suit, and cannot, in general, be compelled to make his election in which court he will proceed, as in cases where chancery and *68 Jaw have concurrent, jurisdiction. lie is, therefore,, bound to resort to each court to perform its appropriate functions; and as he cannot be prevented irom pro-deeding at law, he ought not to be permitted to ask the chancellor to do more for him than law cannot do. See Dunkley vs. Vanbeuren, &c. 3 John. Chan. Rep. 330.
The party may proceed the/before1" atthetimeof, <«• after the chancery suit ^ 1S“’
[9] At common law, in-be Recovered on a demand for rent. Ita ~YrguPtae,t
where the demand for rent is secured by statute^’ives interest.
(9) It is insisted that the court erred in decreeing in-terest to the complainant below, on four hundred and dollars of this demand; that one third of it was for articles furnished, and partook of the nature of an open account, and the residue was for rent; and that interest on rept COuld not be given, according to the opinion of ^’■s codri 'n the case Breckinridge vs. Brooks, 2 Marsh, 335, and authorities there cited. It is readily conceded, that it is a general principle of the common law, which equity follows, that interest on rents could not be given. The reasons alleged for the rule are, that rent is profit, and interest is charging profit on profit; and more particularly, that the landlord can distrain, and ought not to be allowed to delay so speedjr a remedy until the interest accumulates. Whether these reasons are sufficient to sustain the rule, we need not now enquire; for the principle has received such repeated adjudications, that it is now sufficient to say, lex ita scripta eat. We still approve of'the decision rendered in the case of Breckinridge vs. Brooks, and have no doubt that it is applicable tocases of rent due, as that was. Indeed, it has been applied to actions of debt for rent, where the sum was liquidated between the parties by the reservation of the lease or other instrument of writing. See Newton vs. Wilson, 3 Hen, and Mum. 470. If this case was to bp tested exclusively by the rules of the common law, notwithstanding the existence of a written article of agreement between the parties, liquidating the sum and engaging its payment, we should hesitate to allow the interest on rent.
(10) But the will of the legislature rules, this ques-lion. It will be seen, by pursuing the numerous cases c'ted the elaborate case of Newton vs. Wilson, that where rent is due on a bond or penal bill, and the judg-meat is entered for the penalty, interest is allowed, aQt* case bonds is an exception to the general rule; and by examining the act of assembly regulating interest, 2 Dig. L. K. 675, it will be found that the legislature has raised this article of agreement to the *69 tie of a bond or penal bill, with regard to interest, therefore this case must be decided as if the rent due by bond. The words of the statute are, ‘■'•all ■ founded on any specialty, bill or note in writing, ¡rtaining the demand, shall carry interest in the e manner as debts due on a bond or bill with a pen- , under seal.” Here, all debts liquidated by wri- , are included; and specialties, that is, notes sealed lout penalty, and bills or notes not sealed, are rais-o the dignity of bonds, in the demand of interest, Iher for rent or not. Certainly, then, this article ies interest on the rent, and the same answer-may. iven to the one hundred and fifty dollars due for orsand slave-hire.. That demand is liquidated by ¡ame instrument, and of course must bear interest and the court did not err in allowing interest.
[it] When advances art: made- by the mortgagee in continuation of those provided for in the mortgage they are pre'-sumed, prima facie, to be made on its faith, and if no other in-cumbrancer resists it, wiii be tacked to it.
1) But this demand was extended by furnishing ar-s fifty dollars further, and for this also the court a decree, which is urged to be erroneous. It be readily conceded, according to the principles |’e stated, that the court ought not to have given a e and execution for this sum. But whether it is tacked to the mortgage, and made to operate as a lipón the slave, is a different question. One ohjec-to its being so allowed, arises from the words of the (e of agreement and mortgage, which express that rticles furnished were not to exceed one hundred fifty dollars. If these expressions were to be con-das limiting the extent of the lien created by'the pge, they would perhaps be decisive of the con-rsy; but the more appropriate meaning is, that Were intended, to limit the obligation of the com-ant, and to exempt him from going any further one hundred and fifty dollars. Taken in this they leave the excess" to be disposed of accord-the principles and rules of equity; and the ques-s, whether, by those rules; this excess can be al-1.
: it be recollected, that these articles were furnish-la continuation of the supplies provided for by the lage, until the stipulated amount was exceeded, lfumislies a fair presumption, which must stand Icontradicted, that this excess was advanced on ledit of the mortgage,- and must be so taken, also, is a controversy exclusively between the *70 lo a bill to redeem, in which attitude, lacking sue, parties to the mortgage, and r.o other incumbrancer before the court, contesting the annexing of this to <h| mortgage. Under such circumstances, we coneeh that this sum maybe properly attached, and made I farther lien on the slave, even though the mortgagt] is a complainant seeking to foreclose, and not a defe> dant demands may be more favored.
> i»j The ilritish doctrine of tacking to mortgages, prior to the revolution,
¡13] The same, after t.lie revolution.
14J The American de-iisions on the ■ight of the nortgagee to ;ack claims :o the Hen.
(12) The doctrine of tacking, in such cases, well established in the English chancery, in the anti revolutionary cases,, as will be seen by consulting! 'Vern. 4!), 335, Equity Cases Abr. 324, Amb. 635. PoT on Mort. 397-8. In one. case, Amb. G36, a man wll held a mortgage, married a woman who held a bo¡| on the mortgagor, and after her death administered <1 her estate, and was allowed, on a bill to foreclose, tack the bond so gotten by his wife, to his mortgaj against the heir at law of the mortgagor.
(13) This doctrine of tacking, according to Fow<| has been much shaken since, on the authority of pel revolutionary cases, which he cites, and is not aljowl to prevail in any case., even between the parties thel selves, to the original transaction; but may be allowl in controversies between the mortgagee and heir at 1 of the mortgagor, a,nd this to prevent circuity of acticl because, as the heir was bound by the bond of his ceslor, arid the lands descended and embraced by : mortgage were assets in the hands of (ho heir, lial to pay the bond debt, they might thus be subjected! once. Why this reason is not equally, strong for tal ing, in a controversy between the mortgagee and m<| gagor, when all the estate of the latter, in this count! is a fund for the payment of debts, more fully than rl assets can be in the hands of the heir in England, rl why circuity of action would not be as readily prevcl cd by tacking, before as after the death of the- mJ gagor, we leave to casuists to determine.
(14) To this last doctrine of Powell, borrowed'ftl the modern decisions of the English chancery, wchl not only the ante-revolutionary cases before cited, vtl many others opposed, but also the case of Shirras, vs. Craig, &c. 7 Cranch 34, in the supreme court of I Union, where, on a bill to foreclose a mortgage pressing on its face the security of a certain sum ill due, and in a contest with subsequent purchasers, f *71 ipiainant was allowed-, not only the original de-id, but also those contracted afterwards, either on runt of moneys advanced or liabilities incurred r to their receiving actual notice of the defendant’s We have also the opinion of the late enlighten* Chancellor of New-York, who, in the case of James Johnson, &c. 6 John. Chan. Rep. 429, has said, that many cases, a subject pledged for a debt may bo idcredas a security for further loans, and Í see no ¡ble objection to it, if no intervening right exists, to cut the justness of the application of the rule. We o presume that further debts were created, or mi-es made, on the credit of the original security, only where the rights of third persons are preju- " by the want of notice, &c. that the extension of ecurity is prevented.”
[Í5] The taokinc; or not, depend-: on the intent, of the parties
[lii] The pit, ■ ceods of the hire.of a mortgaged slave hired out by order of the ehan-cellor, pending a bill to subject the slave to salo, should be applied in payment of so much of tho demand.
5) These authorities shake, if they do not over-the last recited doctrine of Powell. We would understood as saying they are sufficient to au-a tacking, where there is any proof or circurn-is tending to destroy the presumption thatsubse-advancements were made on the credit of the r pledge; nor need we now say, that the doctrine to be carried to the broad extent warranted by cases. It is sufficient for the present, that they uatify the tacking of the fifty dollars lothemort-under the circumstances of this case. That sum >e taken as due on the credit of the bill taken as sed.
One other point is seriously insisted upon in the linent of errors and in the argument. It is urged, 5 the slave was taken by the sheriff, under the ori-|>rder to hire her out until the end of the next ry term, her hire ought to have been ascertained dited on the mortgage demand. What became slave after the sheriff received her, does not ap-[rom the record; and more hire cannot be pre-than to the extent of the order. As this was en to the complainant, it belonged to the defen-Itnd the court improvidently left it, as it did the Is of the sale, undisposed of, which was incor-|Suftice it to say, that on the return of the cause, rendering a final decree in pursuance of this it will be proper for that court to ascertain, by lussioner, where the slave has been during the *72 controversy, and the amount of hire made, and to cl Pose °f R® decree, in satisfaction of so much the complainant’s demand.
Hnggin, Hickey, fyc. .for plaintiffs; Barry and Hu phreys, for defendant.
The decree must be reversed with costs, and t! cause be remanded, that such decree and proceedin may be had therein, as shall conform to this opinion.